## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SAMARA L. A. SIMMONS**, | |
| Plaintiff, | |
| v. | Civil Action No. 19-cv-2058 (TSC) |
| **U.S. DEPARTMENT OF STATE**, | |
| Defendant. | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Samara L. A. Simmons brought this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a, against the U.S. Department of State ("State"). She has now moved for attorneys' fees. Pl.'s Mot. for Attorneys' Fees ("Pl.'s Mot."), ECF No. 40. Because Plaintiff has not shown that this litigation caused State to comply with her FOIA and Privacy Act requests, she has not substantially prevailed and is accordingly ineligible for attorneys' fees, and the court will therefore DENY Plaintiff's motion.

## I.    BACKGROUND

Plaintiff has worked at State for more than a decade. *Simmons v. Blinken*, No. 23-cv-2437, 2024 WL 3273321, at *1 (D.D.C. July 2, 2024). During that time, she has been embroiled in a multi-faceted dispute with her employer, which included an EEO proceeding, a separate federal lawsuit stemming from the EEO proceeding, litigation before the Foreign Service Grievance Board, submissions to State's Office of Inspector General ("OIG"), interactions with the House Oversight Committee, and more than 25 FOIA or Privacy Act requests (collectively, "FOIA requests"). *See id.*; Pl.'s Mot. at 6–7, 22. From 2016 to 2020, Plaintiff submitted numerous interwoven, duplicative, and overlapping FOIA requests. In turn, from 2016 to 2023, State

produced responsive records, and Plaintiff challenged State's response to five FOIA requests. Although the parties' dispute is wide-ranging, the court will focus on the facts pertinent to Plaintiff's attorneys' fees request.

## A.  2016 FOIA Requests

Plaintiff challenged State's response to three FOIA requests she submitted in 2016 (collectively, the "2016 Requests").  Pl.'s Mot. at 10.  The 2016 Requests each sought "any and all records relating to [Plaintiff], including e-mails and any other form of electronic records, in the care, custody or control" of specific State offices.  Second Am. Compl. ¶¶ 5–12, ECF No. 14 ("2d Am. Compl.").  On August 17, 2016, she requested records from State's "Office of Medical Services (MED) and/or MED/Mental Health Services (MED)."  *Id.* ¶ 5; Pl.'s Ex. 30 at 2–3, ECF No. 46-1.  On August 31, 2016, Plaintiff requested records from State's "Bureau of Human Resources ('HR'), including any and all offices and/or units within HR, including but not limited to HR/ER/CSD, HR/DAS, HR/PDAS, HR/G."  2d Am. Compl. ¶ 8; Pl.'s Ex. 31 at 2–3, ECF No. 46-1.  And, on September 9, 2016, she requested records from "the U.S. Consulate Ciudad Juarez ('CDJ')."  2d Am. Compl. ¶ 11; Pl.'s Ex. 32 at 2, ECF No. 46-1.  The 2016 Requests also sought "records of any form and/or kind" that specific individuals created, sent, or received.  2d Am. Compl. ¶ 11.  Once an individual was included on a request, they appeared on all subsequent requests.  *See id.* ¶¶ 5, 8, 11.  So, the twenty-one individuals listed on the August 17 request appeared on both the August 31 and September 9 requests.  *Id.*  The August 31 and September 9 also included additional names.  *Id.* ¶¶ 5–12.  Each 2016 Request also sought "any and all records relating in any way to [Plaintiff] received and/or obtained either directly or indirectly, from East Orange Hospital in Newark, New Jersey."  *Id.*

**B.  Pre-Litigation Productions and Negotiations**

On August 26, 2016, State acknowledged receipt of Plaintiff's August 17, 2016 request and informed her that it would begin processing.  Am. Compl. ¶ 7, ECF No. 6; Def.'s Ex. 1, ECF No. 43-1.  State assigned Case Control Number P-2016-10512 to the August 17, 2016 and August 31, 2016 requests and Case Control Number P-2016-08921 to the September 9, 2016 request.  *See* Decl. of Susan C. Weetman ("Weetman Decl.") at ¶¶ 5–6, 8–9, 19–20, ECF No. 43-9.

State produced Plaintiff's personal medical records in October 2016.  *Id.* ¶ 7.  On October 5, 2016, "MED's 'Privacy Officer'" emailed Plaintiff to coordinate "the release of medical records" held by the "Medical Records Division . . . in any format (including those that pertain to mental Health Services)."  Pl.'s Ex. 38 at 2, ECF No. 46-2.  But they noted that Plaintiff's request for "any and all records . . . including e-mails and any other form of electronic records" generated by anyone at State would go through the standard FOIA process because responsive records "may contain information about other individuals."  *Id.* at 3.  On October 12, 2016, Plaintiff "picked up from State MED" the "Electronic (eMed2) medical records" and records from Dr. Charles Filson, an individual listed on each 2016 Request.  Def.'s Ex. 2, ECF No. 43-2; 2d Am. Compl. ¶¶ 5–12.  The parties dispute whether the October 2016 production responded to Plaintiff's August 17, 2016 request or a separate FOIA request submitted directly to Dr. Filson on September 20, 2016 and not asserted in this litigation.  Pl.'s Reply to Def.'s Opp'n at 3–4, ECF No. 46 ("Pl.'s Reply").  The August 17, 2016 and the September 20, 2016 requests described the same records.  *Compare* Pl.'s Ex. 30 at 2–3 *with* Pl.'s Ex. 37 at 2, ECF No. 46-2.  Plaintiff's counsel also stated in a November 2016 letter to State that Plaintiff had "received her medical records from medical officials at the Department."  *See* Pl.'s Ex. 27 at 5, ECF No. 40-9.

State made six other pre-litigation productions on August 22, 2018; October 4, 2018; October 10, 2018; December 7, 2018; December 10, 2018; and December 14, 2018 (collectively,

the "pre-litigation productions"). Def.'s Opp'n at 3; Weetman Decl. at ¶¶ 5–18. Plaintiff again claims that the pre-litigation productions respond solely to a separate FOIA request submitted on August 22, 2016, which was not included in this litigation. Pl.'s Reply at 5–7. The August 22, 2016, request tracks the form and substance of the 2016 Requests. It sought (1) "any and all records relating to [Plaintiff], including e-mails and any other form of electronic records, in the care, custody or control of the Bureau of Diplomatic Security (DS);" (2) records from the same individuals listed on the August 31, 2026 and September 9, 2016 requests; and (3) the same East Orange General Hospital records. Pl.'s Ex. 39 at 2, ECF No. 46-2. The release letters accompanying the pre-litigation productions reference the August 22, 2016 request and Case Number P-2016-10512, which was assigned to the August 2016 requests challenged here. *See* Weetman Decl. at ¶¶ 5–18; *e.g.*, Def.'s Ex. 7, ECF No. 43-7.

The pre-litigation productions occurred in connection with the parties' EEO settlement negotiations. Pl.'s Reply at 6–7. In June 2018, State approached Plaintiff regarding "a global settlement." *Id.* at 6. To "facilitate resolution," State "expedited review and the production" of records responsive to Plaintiff's FOIA requests. *See id.*; Pl.'s Ex. 41 at 1, ECF No. 46-2 (EEO settlement included an "expedited review and the production of over 1,000 pages comprising Complainant's [security] file"); Pl.'s Ex. 40 at 2, ECF No. 46-2 (June 26, 2018 email from State counsel to Plaintiff's counsel stating "I was able to get a status update on Ms. Simmons' records request" and noting "part of the value of settlement is being able to bring closure to a set of issues"). On March 8, 2019, the parties reached an agreement whereby State agreed "to pay Simmons $29,000, destroy all physical and electronic copies of Plaintiff's East Orange records currently in its possession, and 'expunge' from any copies of Simmons's 'DS Security File' five categories of information." *See Simmons*, 2024 WL 3273321, at *2; Pl.'s Reply at 7.

**C.  2019 FOIA Requests**

Two months after entering into that settlement agreement, Plaintiff filed new FOIA requests to "obtain proof of whether the Government had held up its end of the bargain." *Simmons*, 2024 WL 3273321, at *2.  In 2019 and early 2020, Plaintiff submitted a "flurry" of 25 FOIA requests.  Pl.'s Reply at 10 & n.11.  She claims many remain outstanding, but only raised two in this action.  *Id.*  One is a May 21, 2019, request for "all records of any kind, including documents, electronic records, and any other form or recorded material in my security file in the care, custody or control of the United States Department of State's Bureau of Diplomatic Security."  Pl.'s Ex. 33 at 2, ECF No. 46-1.  On June 12, 2019, State acknowledged receipt and assigned the request Case Control Number P-2019-06587.  2d Am. Compl. ¶ 15; Answer to 2d Am. Compl. ¶ 15, ECF No. 16.[1]

The other request was submitted on June 24, 2019, seeking "any reports in the care, custody or control of the United States Department of State's Office of Inspector General that may have been prepared relating to [Plaintiff] including reports that may have been prepared relative to complaints that [she] may have submitted, such as those dated November 18, 2016 and March 28, 2019, and any reports relative to case number H20170280."  Pl.'s Ex. 34 at 2, ECF No. 46-1.  On July 9, 2019, State OIG acknowledged receipt and reported that it had "conducted a search and located 11 documents (44 pages) responsive to [Plaintiff's] request."  Pl.'s Ex. 35 at 1, ECF No. 46-1.  State released those documents and informed Plaintiff that "[a]dditional documents" were "forwarded" to State's FOIA department, the Office of Information Programs and Services, "for processing and direct response to [Plaintiff]."  *Id.*; Weetman Decl. ¶¶ 1, 25.

---

[1] The letter transmitting the FOIA request is dated May 6, 2019, but Plaintiff submitted the request on May 21, 2019.  2d Am. Compl. ¶ 13; Pl.'s Ex. 33 at 1.

**D.  Procedural History and Post-Litigation Productions**

Plaintiff filed her original Complaint on July 11, 2019, challenging State's response to her August 16, 2016 and September 9, 2016 requests.  Compl. ¶¶ 5, 8, ECF No. 1.  On August 30, 2019, she amended the Complaint to incorporate the August 31, 2016 request.  Am. Compl. ¶¶ 8–10.  And, on December 3, 2019, she amended again to incorporate the May 2019 and June 24, 2019 requests.  2d Am. Compl. ¶¶ 13–18.  State admitted in its answers that it "had not issued a final response to Plaintiff's FOIA requests," but consistently represented that it produced some records pre-litigation.  *See, e.g.*, Answer to 2d Am. Compl. ¶ 19.

From October 2019 to May 2023, the parties filed joint status reports providing updates on State's productions.  State released records on November 8, 2019; December 20, 2019; January 17, 2020; February 20, 2020; March 20, 2020; August 26, 2020; October 6, 2020; November 20, 2020; December 8, 2020; June 7, 2021; July 19, 2021; August 30, 2021; October 29, 2021; and November 29, 2021.  Joint Status Report ¶¶ 4–5, ECF No. 29.  It explained that throughout 2020 and 2021, production delays occurred because it "had to cease processing documents . . . for a period of time" due to "operational constraints in effect as a result of the COVID-19 pandemic." *See, e.g.*, Joint Status Report ¶ 4, ECF No. 22.  It produced a *Vaughn* Index on October 1, 2021, and a revised *Vaughn* Index on April 1, 2022.  Joint Status Report ¶ 5, ECF No. 38.  State then made supplemental productions on April 1, 2022; May 19, 2022; October 21, 2022; and April 26, 2023 to resolve issues that Plaintiff identified.  *Id.* ¶¶ 5–8.

Without any court action, on May 23, 2023, Plaintiff represented that she had no further objections to State's disclosures, and the sole remaining dispute involved attorneys' fees.  *Id.* ¶ 8.

## II.    ANALYSIS

Under FOIA, courts "may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case . . . in which the complainant has substantially

prevailed."   5 U.S.C. § 552(a)(4)(E)(i).   The attorney fee inquiry contains two prongs: fee "eligibility" and fee "entitlement."  *Brayton v. Off. of the U.S. Trade Rep.*, 641 F.3d 521, 524 (D.C. Cir. 2011) (citing *Jud. Watch, Inc. v. U.S. Dep't of Com.*, 470 F.3d 363, 368–69 (D.C. Cir. 2006)). "The eligibility prong asks whether a plaintiff has 'substantially prevailed' and thus 'may' receive fees."  *Id.* (citation omitted).  To "substantially prevail[]," the party must obtain relief through (1) "a judicial order, or an enforceable written agreement or consent decree," or (2) "a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial."  5 U.S.C. § 552(a)(4)(E)(ii)(I)–(II).

Plaintiff claims she substantially prevailed under the second standard, known as the "catalyst theory."  *See generally Brayton*, 641 F.3d at 524.  "[T]he question under the catalyst theory is whether the institution and prosecution of the litigation caused the agency to release the documents obtained."  *Grand Canyon Tr. v. Bernhardt*, 947 F.3d 94, 97 (D.C. Cir. 2020) (internal quotations and citation omitted).  "[T]he mere filing of the complaint and the subsequent release of the documents is insufficient to establish causation."  *Id.* (quoting *Weisberg v. Dep't of Just.*, 745 F.2d 1476, 1496 (D.C. Cir. 1984)).  Rather, a plaintiff must show "that it is more probable than not that the government would not have performed the desired act absent the lawsuit."  *Grand Canyon*, 947 F.3d at 97 (quoting *Pub. Citizen Health Res. Grp. v. Young*, 909 F.2d 546, 550 (D.C. Cir. 1990)).  "The causation requirement is missing when disclosure results not from the suit but from delayed administrative processing," *Short v. U.S. Army Corps of Eng'rs*, 613 F. Supp. 2d 103, 106 (D.D.C. 2009) (citation omitted), including "delays due to backlogs of FOIA requests, the volume of responsive records requiring processing, the necessity of inter-agency searches and responses, or a combination of these factors," *Codrea v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 272 F. Supp. 3d 49, 53–54 (D.D.C. 2017) (collecting cases).  "[I]t is the plaintiff's

burden to show that the catalyst pathway applies, . . . this at least means that equipoise on the question of causation will not do." *Conservation Force v. Jewell*, 160 F. Supp. 3d 194, 202 (D.D.C. 2016) (citing *Pub. Citizen Health Res. Grp.*, 909 F.2d 546 at 550).

Here, Plaintiff fails to demonstrate that "the litigation caused [State] to release the documents obtained." *Grand Canyon*, 974 F.3d at 97. Instead, the record "makes clear that [State] had begun processing plaintiff's request[s] well before this lawsuit was initiated" and "had even made partial releases . . . before the complaint was filed." *Id.* State promptly acknowledged Plaintiff's FOIA requests, immediately started processing records, and made several pre-litigation productions. Def.'s Opp'n at 3; Weetman Decl. ¶¶ 10–17. Within ten days of Plaintiff submitting her first request, State sent an acknowledgment letter and started "processing" the request. Def.'s Ex. 1. Within two months, State MED emailed Plaintiff to release responsive records--her personal medical records--but informed Plaintiff that her request would otherwise follow the "standard, steady [FOIA] process." Pl.'s Ex. 16 at 3, ECF No. 46-2. Then, in 2018, State "expedited the review and produc[ed]" more than 1,000 pages of responsive records in connection with the EEO settlement negotiations. Pl.'s Ex. 41 at 1; Pl.'s Reply at 6–7. State handled the 2019 requests similarly. Within three weeks of Plaintiff submitting the June 24, 2019 request, State OIG searched for, located, and released responsive records, but referred "[a]dditional documents" to State's principal FOIA office for processing. Pl.'s Ex. 35 at 1; Weetman Decl. ¶¶ 1, 25. State did produce further documents after Plaintiff brought this lawsuit, but it provided a production schedule in November 2019, before Plaintiff added the 2019 FOIA requests to the lawsuit. Joint Status Report ¶¶ 4–5, ECF No. 29. "From this timeline it is clear that [State] expended a considerable amount of time and effort processing the plaintiff's request[s] prior to the filing of [her] lawsuit." *Bigwood v. Def. Intel. Agency*, 770 F. Supp. 2d 315, 321 (D.D.C. 2011). "[T]he ultimate release was the

result of a diligent, ongoing process that began before the initiation of the lawsuit." *See also Env't Integrity Project v. EPA*, 316 F. Supp. 3d 320, 328 (D.D.C. 2018).  Therefore, "the suit was not the cause of the disclosure."  *Short*, 613 F. Supp. 2d 103 at 107.

Plaintiff urges the court to ignore all State's pre-litigation productions, arguing that those relate exclusively to her other FOIA requests, which are not challenged here.  But Plaintiff's own evidence undercuts her.  She claims the October 12, 2016 production responded solely to her September 20, 2016 request, not her August 17, 2016 request.  Pl.'s Reply at 3–4.  But the August 17, 2016 request entirely encompasses the September 20, 2016 request.  *Compare* Pl.'s Ex. 30 at 2–3 *with* Pl.'s Ex. 37 at 2.  It follows that any records responsive to the latter request would also be responsive to the former.  To conclude otherwise requires rewriting the requests or ignoring information in the record.  The August 17, 2016 request sought records "in the care, custody, or control of the Office of Medical Services (MED)."  2d Am. Compl. ¶ 5.  State MED coordinated the production and Plaintiff signed the October 12, 2016 "Receipt for Documents picked up from State MED."  Pl.'s Ex. 16; Def.'s Ex. 2.  And in November 2016, Plaintiff's counsel represented that she recently "received her medical records from medical officials at the Department."  *See* Pl.'s Ex. 27 at 5.  In light of this documentation, Plaintiff's claim that documents "picked up from State MED" were not responsive to a request for records "in the care, custody, or control" of State MED is not credible.

Plaintiff similarly strains to confine the 2018 document productions to another un-litigated FOIA request, submitted on August 22, 2016.  But again, there is a clear overlap between the un-litigated request and the 2016 Requests.  *Compare* Pl.'s Ex. 31 at 2–3 *with* Pl.'s Ex. 39 at 2–3. Like the 2016 Requests, the August 22, 2016 request sought records from a specific department— the Bureau of Diplomatic Security—but it otherwise sought the same types of records, from the

same individuals, and pertaining to the same subjects as the 2016 Requests. *Id.* State has also consistently represented that the pre-litigation productions contained records responsive to the 2016 Requests. *See* Answer to Am. Compl. ¶ 13, ECF No. 9; Answer to 2d Am. Compl. ¶ 19; Joint Status Report ¶ 4, ECF No. 11.

Finally, Plaintiff fails to rebut evidence that delayed "disclosure result[ed] not from the suit but from delayed administrative processing." *Short*, 613 F. Supp. 2d at 106. State promptly notified the court when operational constraints imposed by the COVID-19 pandemic required it to "cease processing documents." Joint Status Report ¶ 6, ECF No. 18; *see also* Weetman Decl. ¶¶ 44–60. It also attributed delays to an extensive FOIA request backlog and inter-agency searches. *Id.* ¶¶ 39, 61. At the end of Fiscal Year 2019, State' FOIA backlog totaled 11,086 requests and by late 2023, it had increased to more than 21,500 requests. *Id.* ¶ 39. The "backlogs and difficulties in processing break any purported casual nexus between the[] initiation of [the] lawsuit and the subsequent productions." *Codrea*, 272 F. Supp. 3d at 54.

Based on the record, Plaintiff has not shown that the litigation caused a change in State's position, 5 U.S.C. § 552(a)(4)(E)(ii)(II), such that she "substantially prevailed," *id.* § 552(a)(4)(E)(i). She is therefore ineligible for attorneys' fees.

## III.    CONCLUSION

For the foregoing reasons, the court will DENY Plaintiff's Motion for Attorneys' Fees, ECF No. 40.

Date: March 20, 2025

*Tanya S. Chutkan*

TANYA S. CHUTKAN
United States District Judge